2025 IL App (2d) 250033-U
No. 2-25-0033
Order filed May 27, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Se. E.G., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No.   22-JA-78 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Tony G., Jr., Respondent- | ) | Kathryn D. Karayannis, |
| Appellant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| *In re* Si. E.G., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No.   22-JA-79 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Tony G., Jr., Respondent- | ) | Kathryn D. Karayannis, |
| Appellant). | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Under the procedure set forth in *Anders*, there are no issues of arguable merit on appeal. We therefore grant court-appointed counsel's motion to withdraw as counsel on appeal and affirm the judgment of the circuit court terminating respondent's parental rights to the minors.

¶ 2     On January 2, 2025, the circuit court of Kane County found respondent, Tony G., Jr., unfit to parent his two minor children, Se. E.G. (born May 14, 2017) and Si. E.G. (born February 12, 2020). The same day, the trial court determined that it was in the best interests of the minors that respondent's parental rights be terminated.[1]

¶ 3     The trial court appointed counsel to represent respondent on appeal. Subsequently, appellate counsel moved to withdraw from the appeal pursuant to the procedure set forth in *Anders v. California*, 386 U.S. 738 (1968). See *In re Alexa J.*, 345 Ill. App. 3d 985, 987-90 (2003) (holding that *Anders* applies to termination-of-parental-rights cases and outlining the procedure to be followed when appellate counsel seeks to withdraw). Counsel avers that, after a full examination of the record, he is unable to identify any meritorious issues to be raised on appeal which would warrant relief by this court. Counsel has incorporated into his motion a memorandum outlining one potential issue but ultimately concludes that the potential issue lacks merit. Counsel further avers that he provided respondent a copy of the motion and that he notified respondent of his opportunity to present additional material to this court within 30 days. The clerk of this court also issued an order notifying respondent of the motion to withdraw and allowing him 30 days to respond. The 30-day period has passed, and respondent has not filed a response. After carefully reviewing the record and counsel's motion, we agree that there are no issues which would warrant relief by this court. Accordingly, we grant appellate counsel's motion to withdraw and affirm the judgments of the trial court.

¶ 4                                  I. BACKGROUND

---

[1] Also on January 2, 2025, the trial court found the minors' mother, Ariel E., unfit to parent each minor. Ariel appealed separately. Although Ariel is not a party to this appeal, information related to her is included in this decision, where necessary, to provide context to respondent's appeal.

¶ 5    On January 31, 2022, the Illinois Department of Children and Family Services (DCFS) received a report that respondent was observed "yanking and pulling [Se. E.G.] *** by the collar." It was further noted that respondent had also threatened Se. E.G. that people would beat him if Se. E.G. did not behave. Following the January 31, 2022, report to DCFS, the family was involved in intact services with DCFS. On May 12, 2022, a DCFS worker witnessed respondent pull and yank on Se. E.G.'s arm. On May 26, 2022, respondent struck Se. E.G. in the face. At that time, Se. E.G. and Si. E.G. were taken into protective custody. After protective custody was taken, Se. E.G. was transported to the hospital where he was observed to have "bruising and unexplained injuries." DCFS further noted upon taking the children into protective custody that respondent and Ariel had failed to engage in intact services, there was domestic violence in the home between respondent and Ariel, and respondent had a history of substance abuse issues. On May 27, 2022, the State filed a petition for adjudication on behalf of each minor. With respect to Se. E.G., the petition alleged that he was abused pursuant to sections 2-3(2)(i), 2-3(2)(ii), and 2-3(2)(v) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(2)(i), (ii), (v) (West 2022)) and neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2022)). With respect to Si. E.G., the petition alleged that he was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2022)).

¶ 6    At a shelter care hearing on May 31, 2022, respondent and Ariel stipulated that probable cause existed to proceed with the petitions for adjudication, thereby requiring the urgent and immediate removal of the minors from the home. The court placed the minors in the temporary custody of DCFS and scheduled an adjudicatory hearing. The court also appointed CASA of Kane County as the guardian *ad litem* (GAL) for the minors. The minors were initially placed with

Maribel G. and Joel G., their paternal aunt and uncle. The parents were allowed supervised visitation at the discretion of DCFS.

¶ 7    At a hearing on August 9, 2022, Ariel stipulated to the factual basis submitted by the State regarding the petition for adjudication. At a hearing on September 6, 2022, respondent also stipulated to the factual basis and the trial court found the minors to be abused and neglected. At a dispositional hearing on September 27, 2022, the trial court found that it was in the best interests of the minors that they be made wards of the court. Further, the court determined that, for reasons other than financial circumstances alone, respondent was unfit and unable to care for, protect, educate, train, supervise, or discipline the minors. The court advised respondent that he would need to participate in services to address the reasons the case came into care, including individual therapy, parenting education and/or coaching, a domestic violence partner abuse intervention program (PAIP), and a substance abuse evaluation. The court further advised respondent that he would be required to participate in random drug drops and maintain stable housing and income. The court also requested the agency to consider whether anger management counseling and a neuropsychological evaluation were appropriate. The court set the permanency goal as return home in 12 months.

¶ 8    A status hearing was held on January 10, 2023. At that time, respondent had completed parenting education classes. He also scheduled a domestic violence evaluation. Respondent had not yet engaged in substance abuse treatment or individual therapy. At the January status hearing, the trial court also noted that Se. E.G. had been placed at Hephzibah House, a residential facility, at the end of November 2022.

¶ 9    On April 11, 2023, a status hearing was held. At that time, the court noted that respondent had been inconsistent in his contact with DCFS and had not contacted DCFS since February 2023.

Respondent reported that he had completed a substance abuse evaluation, but DCFS could not confirm his report because respondent failed to sign necessary releases. Further, respondent had failed to appear at several drug drops. His visits with the minor children had been suspended until he obtained a psychological evaluation due to concerns about his behavior during visits. The court also noted that Se. E.G. remained in Hephzibah House and was struggling. Additionally, Se. E.G. needed surgery on his feet.

¶ 10    A series of permanency-review hearings was held between May 2023 and May 2024. During that time, respondent did not make reasonable efforts correct the conditions which were the basis for the removal of the minors from him, nor did he make reasonable progress towards the return of the minors to him. The court noted that as of May 2023, respondent had completed parenting education, but he had not completed any other service. He missed random drug drops and was advised that missed drug drops were considered positive. Rather than attend random drug drops, respondent was scheduling his own drops that were not random. As of May 2023, respondent had not engaged in domestic violence services, scheduled a psychological evaluation or attended psychiatric appointments, engaged in individual therapy, or signed necessary releases for DCFS.

¶ 11    At a permanency review on November 16, 2023, the court noted that respondent had been uncooperative with DCFS. He was not participating in random drugs drops, but did complete a hair follicle test which was positive for cocaine. Although respondent completed a domestic violence screening, he was rejected from the program due to "his denial of abusive behavior." Respondent was also discharged unsatisfactorily from anger management. Although respondent completed a psychological evaluation, he had not engaged in the counseling to which he had been

referred. Additionally, respondent's visits with the minor children remained suspended "due to the inability of the agency to determine his sobriety."

¶ 12    On February 29, 2024, the court held a status hearing. It noted that respondent's reports were "not good." Respondent was not in communication with his caseworker. Although he reported that he completed the substance abuse evaluation and was doing random drug drops, he had not signed releases for DCFS to confirm. Because of this, respondent still did not have visitation with the minors. Further, respondent claimed he did not need anger management. He also requested a different caseworker, claiming his was "sabotaging what he does." Additionally, respondent claimed that Se. E.G. had a cut on his eye, bruises all over his body, and was being shown pornography. The court noted that respondent was yelling in court and stated that he told the caseworker to "shut up" when she was present for a conversation between respondent and his son.

¶ 13    At a permanency-review hearing on May 13, 2024, the State asked the court to find that respondent was not making progress and to set a substitute care goal for the minors. The State expressed concern over the lack of progress in respondent's services, noting that while respondent had "engaged in maybe one or two services," his overall efforts had not been reasonable. The attorney for CASA concurred with the State's argument and noted that temporary custody had been in place for approximately two years with very little progress. Counsel for respondent noted that he participated in substance abuse services, attended random drug drops, attended intensive outpatient treatment, and talked to his children over the phone once a week. Counsel for respondent requested that the court keep the goal at return home and find that respondent was making efforts and "at least some progress." Respondent added that he was trying to complete services, but his "[c]aseworker would not get this [*sic*] paperwork signed" for him. The trial court considered the

parties' arguments and noted that respondent had made some recent efforts, but there was much to be done over two years into the case. It noted that he was not doing individual therapy, which was "most significant because of his psychological evaluation *** which reported he displayed traits of conspiracy thinking, paranoia, anger, poor insight, narcissism and – and was joking about using violence to correct injustice." The court further noted that respondent was not able to engage in parent coaching due to his visits being suspended pending results of his drug drops. Additionally, respondent was not engaged in domestic violence services because he denied any abusive behaviors and was "extremely resistant to the process." The court therefore changed the permanency goal to substitute care pending determination of a petition to terminate parental rights.

¶ 14    On May 30, 2024, the State filed separate petitions to terminate parental rights with respect to each minor. The State alleged the following grounds: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) failure to protect the minors from conditions within their environment that were injurious to the minors' welfare (750 ILCS 50/1(D)(g) (West 2022)); and (3) failure to make reasonable efforts to correct the conditions which were the basis for the removal of the minors from him, or to make reasonable progress towards the return of the minors to him during any nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1(D)(m)(i), (ii) (West 2022)). With respect to the third ground, the State listed two separate nine-month periods: (1) September 7, 2022, through June 7, 2023, and (2) June 8, 2023, through March 8, 2024. The State further alleged that it was in the best interests and welfare of the minors that respondent's parental rights be terminated. A hearing on the State's petitions to terminate respondent's parental rights was held over several dates, beginning on September 30, 2024.

¶ 15    At the unfitness phase of the termination proceeding, the State called four witnesses: (1) Ariel; (2) respondent; (3) Stephanie Sanders, a caseworker for DCFS; and (4) Julie Traskaski, a parent support specialist with ROAN Solutions. The State also submitted several exhibits, including multiple client service plans, certified records and reports from various agencies, and an integrated assessment. In addition, the State asked the court to take judicial notice of various documents, including the minors' birth certificates, the temporary custody orders, the adjudicatory orders, the dispositional orders, and the permanency review orders. After the State rested, the parties proceeded to argument on the issue of respondent's unfitness.

¶ 16    On January 2, 2025, following arguments by the parties, the trial court issued its ruling relative to the issue of respondent's unfitness. Initially, the court noted that based on the evidence, the testimony, the exhibits, and the matters of which it had taken judicial notice, the State had proven by clear and convincing evidence that respondent is unfit to have a child based on all grounds set forth in the petitions to terminate parental rights.

¶ 17    The court noted that it had heard testimony from Ariel that she was in a relationship with respondent for over ten years and she would leave and return to the relationship despite respondent's abuse. Ariel testified that she had seen respondent hit Se. E.G. beginning when Se. E.G. was two or three years old, as he was starting to walk. She saw respondent hit Se. E.G., grab and pull his arm, and witnessed Se. E.G. cry and run away. Further, the court noted that respondent denied causing bruises to Se. E.G. and blamed DCFS for the injuries. The court did not find respondent's testimony credible. It noted, for instance, that respondent could not recall substance abuse services, individual therapy, or other services. Additionally, his visits were suspended because he failed to appear for drug drops. Respondent testified that his caseworker was withholding things and that he was not given a reason for why his visits were suspended. The court

noted that the testimony and exhibits rebutted respondent's claims. The court further noted that before respondent's visits were suspended, he had fallen asleep at times, brought inappropriate foods, and would have inappropriate conversations with the children. Respondent testified that he could not recall using cocaine or telling his substance abuse provider that he had last used cocaine in April 2024, because he had been drinking heavily and "was wasted" at the time. On redirect, respondent testified that he had only stopped using drugs in the past two months. Respondent did not provide DCFS or the court with proof that he completed any substance abuse treatment. The court also noted that respondent completed parenting education but no other services. He was referred to individual therapy but was unsuccessfully discharged. He was not accepted into domestic violence services because he denied a need for them. He was referred to anger management services but never completed an assessment despite having a referral.

¶ 18    Based on the foregoing, the trial court found that respondent made no efforts and no progress during any of the nine-month periods. Accordingly, the court found that respondent failed to show a reasonable degree of interest, concern, or responsibility as to the minors' welfare.

¶ 19    At the beginning of the best-interests phase, the court, at the State's request, admitted CASA's best-interests report. In the report, CASA recommended that respondent's parental rights be terminated to allow the minors to achieve their goal of permanency. The State also called Sanders to testify. Respondent did not present any further evidence.

¶ 20    Following argument by the parties, the trial court concluded that it is in the best interests of the minors that respondent's parental rights be terminated. The court noted that the children have Hispanic heritage but are not placed in Hispanic homes. However, the Hispanic heritage was with relation to respondent, and there was no testimony that respondent took efforts to foster the minors' education about their heritage. There was testimony regarding efforts made by the foster

parents to enrich the minors' understanding of their heritage. The court further noted that both of the children are in stable and loving homes. Se. E.G. has resided in his current foster placement for almost six months and is doing very well. The court noted that Se. E.G. expressed that he does not want contact with respondent but does seem to want contact with his mother, which the foster placement is willing to permit. Like Se. E.G., Si. E.G. is also in a stable and loving foster home willing to foster a relationship with his mother. The trial court stated that "based upon [respondent's] lack of progress in any services, [it couldn't] blame either foster home if they do not want to support a relationship" with respondent. Additionally, the trial court emphasized that the "children are thriving in the homes, and the foster parents are willing to maintain a relationship between the children," which it deemed important. The court therefore granted the State's petitions to terminate respondent's parental rights and changed the permanency goal to adoption. A written order reflecting the court's decision was entered for each minor. This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22    The Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2022)) sets forth a two-stage process for the involuntary termination of parental rights. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Initially, the State has the burden of proving by clear and convincing evidence that the parent is unfit under any single ground set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). See 705 ILCS 405/2-29(2), (4) (West 2022); *In re C.W.*, 199 Ill. 2d 198, 210 (2002). If the trial court finds the parent unfit, the State must then show by a preponderance of the evidence that termination of parental rights is in the minor's best interest. See 705 ILCS 405/2-29(2) (West 2022); *In re D.T.*, 212 Ill. 2d 347, 352, 366-67 (2004). On appeal, a court of review will not disturb a trial court's finding as to parental unfitness or a minor's best interests unless it is against the manifest weight of the evidence. *In re N.B.*, 2019 IL App (2d) 180797,

¶¶ 30, 43. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 23 Appellate counsel's motion states that he has thoroughly reviewed the record and has concluded that there are no meritorious issues to be raised on appeal. In accordance with *Alexa J.*, 345 Ill. App. 3d at 987, counsel has identified one potential issue he has considered raising, but which he found not arguably meritorious. That issue is whether respondent's status as a U.S. Marine veteran suggests there is "a need for special consideration for a veteran in the process of terminating his parental rights." Specifically, counsel questioned whether the trial court gave "proper respect" to respondent's veteran status when deciding whether it was in the best interests of the minors to terminate respondent's parental rights. Otherwise, counsel states that his review of the record identified no justiciable issue regarding procedural due process or issues of evidentiary introduction, admissibility, or sufficiency.

¶ 24 During the best-interests phase of parental-rights termination proceedings, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The State bears the burden of proving by a preponderance of the evidence that termination of the parent's rights is in the minor's best interests. *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 74. Section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)) sets forth various factors for the trial court to consider in assessing a minor's best interests. These considerations include: (1) the minor's physical safety and welfare; (2) the development of the minor's identity; (3) the minor's familial, cultural, and religious background; (4) the minor's sense of attachment, including love, security, familiarity, and continuity of relationships with parental figures; (5) the minor's wishes and goals; (6)

community ties; (7) the minor's need for permanence; (8) the uniqueness of every family and every child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the minor. As noted above, we review the trial court's best-interests finding under the manifest-weight-of-the-evidence standard. *In re N.B.*, 2019 IL App (2d) 180797, ¶ 43.

¶ 25    In this case, the trial court received evidence at the best-interests hearing that each of the minors were thriving in their respective foster placements. The minors are in safe, stable foster environments. This was particularly notable for Se. E.G., who was placed in multiple foster homes and then a residential facility before finding stability in his current placement. The foster families were supportive of exploring the minors' knowledge of their Hispanic heritage. Based on the testimony, Se. E.G. did not wish to have contact with respondent. The foster families are encouraging of a relationship between Se. E.G. and Si. E.G., and, if appropriate, with Ariel. Further, the foster parents are willing to provide permanency.

¶ 26    The CASA report submitted at the best-interests hearing indicates that Se. E.G.'s behavior improved in his foster placement after having issues with impulsivity and hyperactivity while in a residential placement. Further, Se. E.G. calls his foster parent "Daddy," and has told him "I love you." CASA staff members reported that Se. E.G. cares deeply about his relationship with his foster parent and is responsive to corrections from his foster parent. Further, Se. E.G. is diagnosed with Autism, attention deficit hyperactivity disorder (ADHD), and disruptive mood dysregulation disorder. His foster parent has taken a trauma-informed class to better understand and support Se. E.G.'s unique needs. His foster parent has been quick to get needed services established for Se. E.G.

¶ 27    The CASA report submitted further indicates that Si. E.G. is comfortable in his current placement. Si. E.G. has his own bedroom and proudly showed CASA staff the parts of his bedroom

he was particularly fond of. Si. E.G. is also comfortable approaching his foster parents to get his wants and needs met. He is engaged in some at-home routines and chores.

¶ 28    Appellate counsel suggests that respondent's status as a veteran may "issue a need for special consideration." However, he concedes that the record provides "little if any traction for the development of a claim on a veteran's related issue." Moreover, he contends that there is no caselaw that would have provided support for a "veteran exception or preference" and that he is unable to "craft a meaningful proposition sufficient to advance a rational argument" that it was not in the best interests of minors to terminate respondent's parental rights.

¶ 29    We agree and conclude that there is no arguable merit to a claim that it was against the manifest weight of the evidence for the trial court to conclude that the termination of respondent's parental rights was in the minors' best interests. Based on the testimony and other evidence presented, we have no basis for finding that a conclusion opposite that of the trial court is clearly evident or that the trial court's decision is unreasonable, arbitrary, or not based on the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Accordingly, there is nothing to indicate that the trial court erred in finding that it was in the best interests of the minors to terminate respondent's parental rights.

¶ 30                                      III. CONCLUSION

¶ 31    After examining the record, the motion to withdraw, and the supporting memorandum of law, we agree with appellate counsel that respondent's appeal presents no issues of arguable merit. Thus, we grant the motion to withdraw and affirm the judgments of the circuit court of Kane County.

¶ 32    Affirmed.